IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---------------------------------------------------X

M&B IP ANALYSTS, LLC,

                  Plaintiff,

   -against-

CORTICA-US, INC., and
CORTICA, LTD.,

              Defendants.

---------------------------------------------------X

Index No.: 2:19-cv-00429

**PLAINTIFF M&B IP ANALYSTS, LLC'S MEMORANDUM
OF LAW IN OPPOSITION TO MOTION TO DISMISS**

ALLYN & FORTUNA LLP
Nicholas Fortuna
*Attorneys for Plaintiff M&B IP Analysts, LLC*
1010 Avenue of the Americas, 3rd Floor
New York, New York 10018
(212) 213-8844

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES...................................................................ii

PRELIMINARY STATEMENT.............................................................1

STATEMENT OF FACTS..................................................................1

ARGUMENT................................................................................5

    A. This Court Has Personal Jurisdiction Over Cortica, Ltd....................5

    This Court Has Specific Jurisdiction Over Cortica, Ltd....................6

        a. Cortica, Ltd. Has Purposefully
           Directed Activity at New Jersey.................................................7

        b. Cortica, Ltd.'s Activity Directed at New Jersey
           Relates to M&B's Claim in this Action.................................11

        c. This Court's Jurisdiction Over Cortica Otherwise
           Comports with Traditional Notions of Fair Play
           and Substantial Justice....................................................12

    B. This Court is the Most Convenient Forum
       for the Dispute Between M&B and Cortica.........................14

    C. eNitiatives is Not a Party to the Dispute
       Between M&B and Cortica................................................17

CONCLUSION...........................................................................19

i

# TABLE OF AUTHORITIES

Page

Federal Cases

*American Cyanamid Co. v. Picaso-Anstalt*,
741 F. Supp. 1150 (D.N.J. 1990)................................................................14

*Bachmann Software & Services v. Intouch Group, Inc.*,
No. 08-CV-2025, 2008WL 2875680 at \*1 (D.N.J. July 22, 2008).................9-10

*Bristol-Myers Squibb Co. v. Superior Court of California*,
137 S.Ct. 1773 (2017)....................................................................................11

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)...........................................................................*passim*

*Eurofins Pharma US Holdings v. BioAlliance Pharma SA*,
623 F.3d 147 (3d Cir. 2010)...........................................................................14

*General Electric Co. v. Deutz AG*,
270 F.3d 144, 150 (3d Cir. 2001.................................................................6, 7, 8

*Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*,
988 F.2d 476 (3d Cir. 1993).............................................................................9

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984).......................................................................................11

*International Shoe Co. v. Washington*,
326 U.S. 310 (1945).....................................................................................5, 12

*Koster v. (Am.) Lumbermens Mut. Cas. Co.*,
330 U.S. 518 (1947).......................................................................................14

*Kultur International Films Ltd. v. Covent Garden Pioneer FSP, Ltd.*,
860 F.Supp. 1055 (D.N.J. 1994).....................................................................10

*Lony v. E.I. Du Pont de Nemours & Co.*,
635 F.2d 604 (3d Cir. 1991).......................................................................15, 16

*Marten v. Godwin,*
499 F.3d 290 (3d Cir. 2007)..................................................................7

*Mellon Bank (East) PSFS, N.A. v. Farino,*
960 F.2d 1217 (3d Cir. 1992)...................................................11-12, 13

*Miller v. Boston Scientific Corp.,*
380 F.Supp.2d 443 (D.N.J. 2005)......................................................14

*Miller Yacht Sales, Inc. v. Smith,*
384 F.3d 93 (3d Cir.2004).................................................................5

*North Penn Gas Co. v. Corning National Gas Corp.,*
897 F.2d 687 (3d Cir. 1990)...............................................................8

*Piker v. Roche Holdings, Ltd.,*
292 F.3d 361 (3d Cir. 2002)...............................................................5

*Piper Aircraft Co. v. Reyno,*
454 U.S. 235 (1981).......................................................................15

*Provident Nat. Bank v. California Fed. Savings & Loan Assoc.,*
819 F.2d 434 (3d Cir. 1987)................................................................5

*Remick v. Manfredy,*
258 F.3d 248 (3d Cir. 2001)..........................................................6, 7, 9

*Telcordia Tech Inc. v. Telkom SA Ltd.,*
458 F.3d 172 (3d Cir. 2006).............................................................5, 6

State Cases

*Charles Gendler & Co., Inc. v. Telecom Equip. Corp.,*
102 N.J. 406 (1986)........................................................................5

Rules

Fed. R. Civ. P. 4(e)........................................................................5

Fed. R. Civ. P. 12(b)(7)………………………………………………………………...17

Fed. R. Civ. P. 19……………………………………………………………………..17

## PRELIMINARY STATEMENT

Plaintiff M&B IP ANALYSTS, INC. ("M&B") respectfully submits this Memorandum of Law in opposition to Defendant CORTICA, LTD. ("Cortica, Ltd.")'s motion to dismiss this action for lack of personal jurisdiction, pursuant to the doctrine of forum non conveniens, and for failure to join an indispensable party. Because this Court both has jurisdiction over Cortica, Ltd. and is the most convenient forum for the contract dispute between M&B because it is separate from Cortica, Ltd.'s litigation with eNitiatives IP Ltd. ("eNitiatives") in Isarel, Defendant CORTICA-US, INC. ("Cortica-US"), and Cortica, Ltd., Defendants' motion should be denied in its entirety.

## STATEMENT OF FACTS

M&B is a limited liability corporation with is principal place of business in the State of New Jersey. (Complaint, hereinafter "Compl.," at ¶ 3.) M&B was founded in 2014 by Michael Ben-Shimon, a patent agent registered to practice before the United States Patent and Trademark Office (USPTO). (Compl. at ¶ 8.) Since its founding in 2014, M&B's entire business operation has been located in New Jersey and all of M&B's employees are located in New Jersey. (Certification of Michael Ben-Shimon, hereinafter the "Ben-Shimon Cert.," at ¶¶ 29, 31.)

In 2014, Cortica, Ltd. directly engaged M&B to act as its United States patent agent, responsible for filing and prosecuting patent applications with the USPTO

1

and performing annuity monitoring and maintenance on its behalf. (Compl. at ¶ 13; Ben-Shimon Cert. at ¶ 3.) In furtherance of this relationship, Karina Odinaev, Chief Operations Officer and Chief Intellectual Property Officer of Cortica, Ltd. executed a Revocation of Power of Attorney and New Power of Attorney and Change of Correspondence Address form, which was filed with the USPTO, and appointed M&B as Cortica's agent before the USPTO. (Ben-Shimon Cert. at ¶¶ 3-4; Ex. A to the Ben-Shimon Cert.)

Thereafter, and until mid-2018, M&B directly provided Cortica with patent agent services with respect to Cortica's United States patents filed with the USPTO, at the direction coordination of Cortica's employees. (Compl. at ¶¶ 15-16; Ben-Shimon Cert. at ¶ 6.) M&B also made disbursements to the USPTO on behalf of Cortica, with the direct authorization of Cortica, for Cortica's United States patents. (Compl. at ¶ 15; Ben-Shimon Cert. at ¶ 7.) All of the work performed by M&B on behalf of Cortica, Ltd. with respect to Cortica, Ltd.'s United States patents was done by M&B employees working out of M&B's office located in Morristown, New Jersey. (Ben-Shimon Cert. at ¶¶ 14-17.)

In performing patent agent work on behalf of Cortica, Ltd. and at its explicit direction, M&B and Cortica employees exchanged hundreds of email communications about the substance of the work. (Ben-Shimon Cert. at ¶ 13.) For example, Mr. Ben-Shimon and M&B patent paralegal Wendy Perrault engaged in

2

email correspondence with Ms. Odinaev and Cortica, Ltd. Chief Financial Officer Asher Avital from December 7, 2017 through February 2, 2018 regarding M&B's payment of annuities for three of Cortica, Ltd.'s United States patents. (Ben-Shimon Cert. at ¶ 11; Exhibit G to the Ben-Shimon Cert.) In that correspondence, Cortica, Ltd. expressly directly M&B to pay the fees to the USPTO on Cortica, Ltd.'s behalf, received information on the amount due directly to M&B for the disbursement and payment, and acknowledged not only that amount but Cortica's substantial open balance to M&B. (Exhibit G to the Ben-Shimon Cert.)

On another occasion, Ms. Perrault engaged in email communication with Ms. Odinaev and Cortica employee Liron Golan from December 5, 2017 through May 1, 2018, regarding deadlines and amendment filings regarding one Cortica, Ltd. United States patent in response to an office action from the USPTO. (Ben-Shimon Cert. at ¶ 12; Exhibit H to Ben-Shimon Cert.)

M&B directly invoiced Cortica, Ltd. for its patent agent services and for repayment of amounts disbursed to the USPTO on Cortica, Ltd.'s behalf. (Compl. at ¶ 20; Ben-Shimon Cert. at ¶ 8.) All M&B invoices were generated in and sent from M&B's office in Morristown, New Jersey. (Ben-Shimon Cert. at ¶ 17.) Altogether, Cortica paid M&B $731,392.67 in thirteen payments from January 8, 2015 to February 6, 2018. (Ben-Shimon Cert. at ¶ 9; Exhibit C to Ben-Shimon Cert.). Cortica also regularly engaged in email communications with M&B employees to

3

confirm the receipt of invoices, acknowledge amounts due, and confirm payment of open balances. (Ben-Shimon Cert. at ¶ 10; Exhibits D, E, and F to Ben-Shimon Cert.)

In all respects, the contractual relationship between M&B and Cortica was direct. Cortica directly coordinated M&B's work, directly approved disbursements, and directly paid M&B for both. Cortica's allegations that it had no idea who M&B was and that it never engaged M&B are not credible. Cortica knowingly and directly engaged M&B as its agent for all of Cortica's patents in the United States with the USPTO. Cortica's founders met with Mr. Ben-Shimon in the United States and was aware, through those meetings and the extensive email correspondence and invoicing that M&B operated out of New Jersey. (Ben-Shimon Cert. at ¶¶ 20, 24.)

Cortica's claim that M&B was a subcontractor of Israeli firm eNitiatives in not correct. Moreover, Cortica's claim that M&B is involved with its dispute with eNitiatives in Israel is not correct, as that dispute involves a separate agreement with eNitiatives to which M&B is not a party. (Ben-Shimon Cert. at ¶¶ 32-33.) eNitiatives was responsible for Cortica's overall international patent portfolio and patent filing strategy, which was a different and broader remit than M&B's responsibility for the filing and maintenance of Cortica's United States patents, which was conducted exclusively out of M&B's office in Morristown, New Jersey. (Ben-Shimon Cert. at ¶¶ 31-36.)

4

**ARGUMENT**

A. <u>**This Court Has Personal Jurisdiction Over Cortica, Ltd.**</u>

In reviewing a motion to dismiss for lack of personal jurisdiction, this Court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." <u>Telcordia Tech Inc. v. Telkom SA Ltd.</u>, 458 F.3d 172, 177 (3d Cir. 2006), *citing* <u>Piker v. Roche Holdings, Ltd.</u>, 292 F.3d 361, 368 (3d Cir. 2002). M&B "need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor. <u>Miller Yacht Sales, Inc. v. Smith</u>, 384 F.3d 93, 97 (3d Cir.2004).

Under Rule 4(e) of the Federal Rules of Civil Procedure, this Court is authorized to assert personal jurisdiction over a non-resident to the extent permissible by the law of the state in which the Court sits. <u>Provident National Bank v. California Federal Savings & Loan Assoc.</u>, 819 F.2d 434, 436 (3d Cir. 1987). New Jersey's long-arm statute provides jurisdiction up to the limits of protection afforded to nonresidents by the Due Process Clause of the Fourteenth Amendment. <u>Charles Gendler & Co., Inc. v. Telecom Equip. Corp.</u>, 102 N.J. 406, 469 (1986). Under this standard, a non-resident may be subject to personal jurisdiction if the non-resident has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'." <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945).

In determining jurisdiction in a case involving breach of contract, "the district court must consider the totality of the circumstances." *Telcordia Tech Inc.*, *supra* at 177. This includes the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing. *Remick v. Manfredy*, 258 F.3d 248, 256 (3d Cir. 2001); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985) (must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing").

As discussed below, based on the allegations in M&B's Complaint and the supplemental information contained in the Certification of Michael Ben-Shimon, M&B has set established a prima facie case of specific jurisdiction over Cortica, Ltd. that comports with the Due Process Clause's notions of fair play and substantial justice.

> This Court Has Specific Jurisdiction Over Cortica, Ltd.

Specific jurisdiction is established "when a non-resident defendant has 'purposefully directed' his activities at a resident of the forum and the injury arises from or is related to those activities." *General Electric Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001). The Third Circuit has held that

> Questions of specific jurisdiction are properly tied to the particular claims asserted. In contract cases, courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach. Parties who "reach out beyond [their] state and create continuing relationships and obligations with citizens of another state" are subject to the regulations of their activity in that undertaking.

Id. Questions of specific jurisdiction are examined on a claim-by-claim basis. Marten v. Godwin, 499 F.3d 290, 298 (3d Cir. 2007). The application of the three-part test for specific jurisdiction, discussed below, must result in a finding of jurisdiction over Cortica, Ltd., an entity which purposefully directed its activities at New Jersey. In addition, M&B's claim arises directly out of Cortica's activity directed at New Jersey and the assertion of jurisdiction over Cortica would serve notions of fair play and substantial justice.

a. Cortica, Ltd. Has Purposefully Directed Activity at New Jersey.

The first inquiry is to determine whether Cortica, Ltd. "purposefully directed" its activity with M&B at New Jersey. The Third Circuit has "expressly acknowledged that in many instances, personal jurisdiction can arise primarily from a nonresident defendant's contract with a forum resident." Remick at 256. Here, the contract between M&B and Cortica and all of Cortica's activities surrounding that contract indicate that Cortica purposefully directed itself at New Jersey continually for the next four years.

7

Physical presence in the forum state is not required for a finding of jurisdiction when it is accompanied by facts indicating a purposeful availment "since '[j]urisdiction…may not be avoided merely because the defendant did not *physically* enter the forum state'." North Penn Gas Co. v. Corning National Gas Corp., 897 F.2d 687, 691 (3d Cir. 1990), *citing* Burger King, *supra*. In the situation where a long-term relationship has been established, physical presence is less determinative. General Electric Co. at 151. In North Penn, for example, the Third Circuit held that a contract with the plaintiff in the forum state, the defendant's participation in a long-term relationship with the plaintiff, and the transmittal of payments to the plaintiff in the forum state were sufficient contacts to establish personal jurisdiction over an out-of-state defendant. Id. at 691.

Physical presence in the state is decreasingly relevant in modern commercial dealings, which are often characterized by electronic communications than physical presence. General Electric Co. at 150-151. In Burger King, for example, the Supreme Court held that

> it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

8

Burger King at 476; *see also* Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476 (3d Cir. 1993) (holding that "[m]ail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction"). The Burger King Court went on to find that the defendant, who had no office in Florida, nonetheless was subject to jurisdiction there because they deliberately reached out beyond their home state via other mail and telephone to engage with a Florida corporation and derived the benefits from that association. Furthermore, it was apparent that the defendant knew they were affiliating themselves with a business based in Florida, that all business was to be conducted from plaintiff's office in Florida, and that invoices were sent from and payments sent to Florida. Id. at 480.

Likewise, in Remick, the Third Circuit exercised specific jurisdiction over an out-of-state resident based on telephone calls placed to the Pennsylvania, a contract partially executed in the Pennsylvania, and at least one payment sent to Pennsylvania, in addition to a constellation of "entangling contacts" in Pennsylvania. Further, the Third Circuit noted that the defendant was aware that the services performed by the plaintiff on the defendant's behalf were performed in Pennsylvania. Remick at 257.

In Bachmann Software & Services v. Intouch Group, Inc., this Court found that the exchange of voluminous electronic communications to the plaintiff in New

Jersey, payments sent to New Jersey, and the defendants' knowledge that the contract was being performed by the plaintiff in New Jersey all sufficed to establish personal jurisdiction over a foreign defendant who did not appear in the forum. No. 08-CV-2025, 2008WL 2875680 at *1 (D.N.J. July 22, 2008); *see also* Kultur International Films Ltd. v. Covent Garden Pioneer FSP, Ltd., 860 F.Supp. 1055 (D.N.J. 1994) (finding that seven fax communications and "numerous" phone calls in New Jersey were sufficient basis for personal jurisdiction).

The allegations in M&B's Complaint, which must be accepted as true for the purposes of this motion, demonstrate that Cortica, Ltd. purposefully entered into a contractual relationship with M&B in 2014, which continued through 2018. (Compl. at ¶¶ 13, 18.) Cortica purposefully entered into this relationship when Ms. Odinaev executed the Power of Attorney, which was filed with the USPTO and which appointed M&B as Cortica's agent in the United States for Cortica's U.S. patents. (Ben-Shimon Cert. ¶ 4; Exhibit A to Ben-Shimon Cert.) From 2014 through 2018, Cortica and M&B conducted regular and continuous business, which included: (1) regular email communication regarding the substance of the work to be performed by M&B in New Jersey on behalf of Cortica (Ben-Shimon Cert. at ¶¶ 11-13); (2) regular invoices sent from M&B's office in New Jersey to Cortica for those services (Ben-Shimon Cert. at ¶ 10); and (3) regular payments sent by Cortica to M&B in New Jersey. (Compl. at ¶¶ 16, 20-21; Ben-Shimon Cert. at ¶¶ 9, 19.) Cortica entered

into a long-term business arrangement in New Jersey and assumed significant obligations in New York during the course of that ongoing relationship.

This evidence, examined as a whole, indicates that Cortica, Ltd. purposefully targeted its business at New Jersey during the course of its business relationship with M&B and knowingly engaged in the forum state.

    b. Cortica, Ltd.'s Activity Directed at New Jersey Relates to M&B's Claim in this Action.

The second inquiry in this jurisdictional analysis is the extent to which the Cortica, Ltd.'s business relationship with M&B and the activity in which it engaged in furtherance of that relationship relates directly to M&B's claim in this action. For Due Process purposes, the foundation of personal jurisdiction is the "relationship among the defendant, the forum, and the litigation." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). The Supreme Court has held that

> there must be "an affiliation between the forum and the underlying controversy"…For this reason, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."

Bristol-Myers Squibb Co. v. Superior Court of California, 137 S.Ct. 1773, 1780 (2017) (internal citations omitted). Here, it is undisputed that the business relationship between Cortica and M&B and the surrounding extensive contacts, communications, and payments between Cortica and M&B relate directly to M&B's claims in this action. All elements of the relationship between M&B and Cortica

11

concerned M&B's provision of patent agent services for Cortica from 2014 through 2018. It is Cortica's failure to pay M&B for those services that directly resulted in this claim.

   c. <u>This Court's Jurisdiction Over Cortica Otherwise Comports with Traditional Notions of Fair Play and Substantial Justice.</u>

The final inquiry is whether this Court's jurisdiction over Cortica, Ltd. otherwise comports with traditional notions of fair play and substantial justice, as required by the Due Process clause and the Supreme Court's decision in <u>International Shoe Co. v. Washington</u>. In that case, the Supreme Court stated that when a corporation "exercises the privilege of conducting activities within a state...[t]he exercise of that privilege may give rise to obligation." 66 S.Ct. 154, 160 (1945).

In <u>Mellon Bank (East) PSFS, N.A. v. Farino</u>, the Third Circuit analyzed this element in a situation where three out-of-state defendants solicited and then defaulted on guaranty and suretyship agreements with a bank based in Pennsylvania. The Court ultimately held that

> we have emphasized that parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to regulation and sanctions in the other State for the consequences of their activities.... [W]here individuals "purposely derive benefit" from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial

12

> shield to avoid interstate obligations that have been
> voluntarily assumed.

960 F.2d 1217, 1222 (3d Cir. 1992), *quoting* Burger King at 473-474. Here, Cortica

engaged M&B in 2014, taking advantage of the privilege of doing business in New

Jersey with a New Jersey entity. Over the course of that relationship, Cortica

received nearly a million dollars' worth of patent agent services and disbursements

paid directly to the USPTO on its behalf and for the benefit of its United States

patents. Cortica paid M&B $731,392.67 over approximately three years for the

services provided and disbursements paid by M&B in New Jersey. (Ben-Shimon

Cert. at ¶ 9). Now, Cortica owes M&B an additional $275,143.00 for services

provided and disbursements paid by M&B in New Jersey, which M&B seeks to

recover in this action. It is fundamentally fair and foreseeable that Cortica would be

subject to jurisdiction in New Jersey as a result of these business arrangements and

the resulting obligations.

In sum, M&B has established its *prima facie* entitlement to personal

jurisdiction over Cortica, Ltd. In response, "the burden falls upon the defendant to

show that the assertion of jurisdiction is *unconstitutional*." Mellon Bank, *supra* at

1226. Given the totality of the circumstances, the extensive communications and

payments between the parties, and Cortica's purposeful targeting of M&B's services

in New Jersey, it is eminently reasonable for this Court to exercise personal

jurisdiction over Cortica, Ltd. in this matter.

B. **This Court is the Most Convenient Forum**
   **for the Dispute Between M&B and Cortica.**

Defendants' motion to dismiss the Complaint based on the doctrine of forum

non conveniens should be denied because this Court is the most convenient forum

for the dispute between M&B and Cortica. This Court has held that "it is not the role

of the court to deny a plaintiff his choice of forum where the plaintiff has filed his

claim in conformity with statutory and constitutional jurisdictional requirements."

Miller v. Boston Scientific Corp., 380 F.Supp.2d 443, 447 (D.N.J. 2005). The

doctrine "must be sparingly applied, inasmuch as its application results in the

dismissal of a case over which the Court has jurisdiction and would ordinarily have

a duty to resolve. American Cyanamid Co. v. Picaso-Anstalt, 741 F. Supp. 1150,

1155 (D.N.J. 1990).

In evaluating whether the application of the doctrine of forum non conveniens,

this Court must consider whether an adequate alternate forum exists, the appropriate

amount of deference to be given to the plaintiff's choice of forum, and the balancing

of the public and private interest factors. Eurofins Pharma US Holdings v.

BioAlliance Pharma SA, 623 F.3d 147, 160 (3d Cir. 2010). This analysis should tip

in favor of dismissal only when trial in the chose forum "establish[es] such

oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's

convenience." Koster v. (Am.) Lumbermens Mut. Cas. Co., 330 U.S. 518, 524

(1947).

14

As an initial matter, Israel is not an adequate alternate forum for this dispute, which involves a New Jersey company that has no physical presence in Israel, does no business there, and would not be available for service of process in that jurisdiction. (Ben-Shimon Cert. at ¶ 28.) M&B's work on behalf of Cortica was not performed in Israel and there is no nexus with Israel with the subject of this action. (Ben-Shimon Cert. at ¶ 29.)

Second, M&B's choice of this forum should be afforded the utmost deference. A plaintiff's choice of forum "is entitled to greater deference when the plaintiff has chosen the home forum" because "it is reasonable to assume that this choice is convenient." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255–56 (1981). Here, M&B has chosen to bring this suit in this Court, which is its home forum as it is a New Jersey limited liability company whose members are legal permanent residents and citizens of the State of New Jersey. (Compl. at ¶ 3.)

Third, the private interest factors in litigating this dispute in this forum tip in M&B's favor. The private interest factors include

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses;…and all other practical problems that make trial of a case easy, expeditious and inexpensive.

Lony v. E.I. Du Pont de Nemours & Co., 635 F.2d 604, 609 (3d Cir. 1991). Here, this Court has easy access to a variety of sources of proof, including but not limited

to M&B employees as witnesses, M&B's books and records, and communications between the parties, all of which can be found in New Jersey. (Ben-Shimon Cert. at ¶ 31.) It will be expedient and cost-effective to have M&B witnesses appear in this Court. In addition, not all of Cortica's employees and potential witnesses are based in Israel. Cortica maintains an office in New York and several employees with knowledge of the facts and circumstances of M&B's claim have worked or currently work out of that office. (Ben-Shimon Cert. at ¶¶ 22-25.) In addition, it would be most cost effective and convenient for all parties to continue to litigation in this forum without relocating to a court in another country.

Finally, the public interest factors in litigating this dispute in this forum tip in M&B's favor. The public interest factors include

> the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness with burdening citizens in an unrelated forum with jury duty.

Id. at 612. This forum is free from administrative difficulties and has an interest in hearing this case, which involves a New Jersey patent agent doing work related to United States patents pursuant to a contract to which New Jersey law will apply, in this forum.

16

In addition, were this case to be transferred to Israel, as Cortica would prefer, M&B would be forced to join its claims with the larger litigation with eNitiatives. That litigation concerns an Israeli contract, entered into and performed in Israel, and governed by Israeli law. (Ben-Shimon Cert. at ¶¶ 32-33.) The application of New Jersey law by an Israeli court in the context of that separate dispute would be prejudicial to M&B. (Ben-Shimon Cert. at ¶ 37.)

On the whole, this Court should give M&B's forum choice deference and conclude that the private and public interest factors balance in M&B's favor.

## C. <u>eNitiatives is Not a Party to the Dispute Between M&B and Cortica.</u>

Finally, M&B's Complaint should not be dismissed for failure to join an indispensable party pursuant to F.R.C.P. 12(b)(7). Under F.R.C.P. Rule 19, a party should be joined if:

> in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the persons' ability to protect that interest or (ii) leave any of the substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Here, Cortica claims that eNitiatives, an Israeli entity with a separate contractual relationship with Cortica, is somehow a necessary party to this action, in which M&B seeks payment for services directly rendered to Cortica and for disbursements

directly made to the USPTO on Cortica's behalf. (Ben-Shimon Cert. at ¶¶ 6-7, 34.) eNitiatives has no interest in this dispute between M&B and Cortica, as eNitiatives did not direct M&B's work for Cortica nor did eNitiatives bill Cortica for services provided by M&B. (Ben-Shimon Cert. at ¶ 34.) Any work that eNitiatives performed on Cortica's international patent portfolio was beyond M&B's remit, which was serving as patent agent and doing filings on behalf of Cortica for its United States patents with the USPTO. (Ben-Shimon Cert. at ¶¶ 35-36.) M&B's recovery of its fees in this action will not interfere with Cortica's claims against eNitiatives in Israel.

## CONCLUSION

For all the reasons stated herein, Plaintiff M&B IP Analysts, LLC respectfully requests that this Court deny Defendant Cortica, Ltd.'s motion to dismiss for lack of personal jurisdiction and Defendants Cortica, Ltd. and Cortica-US, Inc.'s motion to dismiss based on the doctrine of forum non conveniens or for failure to join a necessary party, together with such other and further relief as this Court deems appropriate.

Dated: June 24, 2019

ALLYN & FORTUNA LLP

By: _____
Nicholas Fortuna
*Attorneys for Plaintiff M&B IP
Analysts, LLC*
1010 Avenue of the Americas, 3rd Floor
New York, New York 10018
(212) 213-8844

19