# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| M&B IP ANALYSTS, LLC, | |
| Plaintiff, | |
| v. | C.A. No. 2:19-cv-00429 |
| CORTICA-US, INC., and CORTICA, LTD., | Motion Day: August 19, 2019 |
| Defendants. | |

_____

## DEFENDANT CORTICA LTD.'S REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF MOTION TO DISMISS

_____

On the brief:
Adam E. Gersh, Esquire
Jeremy S. Cole, Esquire

Dated: August 12, 2019

# **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................. iii

**ARGUMENT** ...........................................................................................................2

   **I.   THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER CORTICA, LTD** ........................................................................................2

      **A.   M&B Radically Mischaracterizes the Facts** ..............................................3

      **B.   These Facts do not Support Personal Jurisdiction over Cortica, LTD** 8

   **II.   FORUM NON CONVENIENS WARRANTS DISMISSAL OF M&B'S COMPLAINT** .......................................................................................11

   **III.   M&B'S COMPLAINT FAILS TO INCLUDE A REQUIRED PARTY** ..................................................................................................................14

**CONCLUSION**.....................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

Burger King Corp. v. Rudzewicz
   471 U.S. 462, 481 (1985)..................................................................................10

FastShip, LLC v. Lockheed Martin Corp.,
   2018 U.S. Dist. LEXIS 113575 (D.N.J. June 25, 2018).......................................9

Gen. Elec. Co. v. Deutz AG,
   270 F.3d 144 (3d Cir. 2001) ................................................................................9

Kultur Int'l Films Ltd. v. Covent Garden Pioneer FSP, Ltd.,
   860 F.Supp. 1055 (D.N.J. 1994).......................................................................10

Miller v. Bos. Sci. Corp.,
   380 F. Supp. 2d 443 (D.N.J. 2005).......................................................11, 12, 13

Miller Yacht Sales, Inc. v. Smith,
   384 F.3d 93 (3d Cir. 2004) ............................................................................9, 12

Patterson v. FBI,
   893 F.2d 595 (3d. Cir. 1990) ...............................................................................9

Pennzoil Prods. Co. v .Colelli & Assocs., Inc.,
   149 F.3d 197 (3d Cir. 1998) ................................................................................9

Piper Aircraft Co. v. Reyno,
   454 U.S. 235 (1981)..........................................................................................12

**STATE CASES**

Knight v. New Eng. Mut. Life Ins. Co.,
   220 N.J. Super. 560 (App. Div. 1987)................................................................5

Starkey v. Estate of Nicolaysen,
   172 N.J. 60 (2002) ..............................................................................................6

**FEDERAL STATUTES**

28 U.S.C. § 1782 .................................................................................................13

**RULES**

F.R.C.P. 12(b)(7) ................................................................................................15

Plaintiff M&B IP Analysts, LLC's ("M&B") opposition actively misleads this Court as to the inextricable role eNitiatives IP Ltd. ("eNitiatives") played in the relationship underlying M&B's claims against Defendants Cortica, LTD and Cortica-US, Inc. (collectively, "Cortica") and Cortica's defenses and, tellingly, refuses to even answer discovery as to that relationship.[1] Cortica, LTD had a contract with non-party eNitiatives that governed its relationship with M&B. Cortica-US, Inc. has no relation whatsoever to this case, as it never engaged with or received any services from eNitiatives or M&B, and it does not own any patent applications or registrations in the U.S. or elsewhere. Cortica, LTD contracted eNitiatives to manage and service its patent portfolio, including its U.S. patents. eNitiatives prepared budgets for Cortica, LTD's U.S. patent work which included M&B's work, engaged third party subcontractors to fulfill its duties (including M&B for U.S. patents), and negotiated with M&B to reduce M&B's fees charged to Cortica, LTD. Only eNitiatives provided substantive advice to Cortica, LTD concerning its U.S. patents. M&B merely sought payment and provided technical notifications regarding office actions and deadlines. Out of convenience, Cortica, LTD paid M&B directly instead of passing payment through eNitiatives.

---

[1] As set forth in the Certification of Jeremy S. Cole in Support of this Motion ("Cole Cert."), Cortica-US, Inc's Interrogatory No. 2 to M&B sought information concerning M&B's relationship with eNitiatives. Cole Cert., ¶¶ 2-4, Ex. A. M&B categorically refused to answer, claiming it was not within the scope of this dispute.

1

Cortica, LTD never sought a relationship with M&B or did anything to show an intent to reach an agreement with M&B that would subject it to jurisdiction in the U.S., especially since all parties knew of the distinct relationships between them. When the relationship between Cortica, LTD and eNitiatives devolved into litigation in Israel ("the Israeli Litigation"), M&B attempted to drag Cortica, LTD into this Court. These minimal contacts are insufficient for this Court to have personal jurisdiction over Cortica, LTD, as it never availed itself of this Court; it hired eNitiatives to avoid doing so, which M&B knew. Thus, M&B's complaint against Cortica, LTD should be dismissed for lack of personal jurisdiction.

Dismissal under forum non conveniens and failure to join a required party is also warranted because eNitiatives is not a party to this litigation, but all relevant parties (Cortica, LTD, eNitiatives, and M&B) are part of the Israeli Litigation. Two issues central to the Israeli Litigation are whether Cortica, LTD was fraudulently double- or over-billed for M&B's and/or eNitiatives' work, and whether eNitiatives and M&B misled Cortica, LTD and provided negligent "professional" services. Because the Israeli Litigation is the only case with M&B, Cortica, LTD and eNitiatives all together, only the Israeli court can address all of the claims among them and this matter should be dismissed in favor of that forum.

## ARGUMENT

**I.    THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER CORTICA, LTD**

### A.     M&B Radically Mischaracterizes the Facts

Contrary to M&B's assertions, the evidence presented by both Cortica and M&B definitively demonstrates Cortica, LTD's sole relationship with M&B (which is its only purported connection to New Jersey) is through a few incidental contacts insufficient to confer personal jurisdiction. M&B contends "Cortica, Ltd. directly engaged M&B to act as its United States patent agent," but its evidence shows that Cortica engaged and directed eNitiatives, which, in turn, engaged and directed M&B. M&B Brief in Opposition to Cortica's Motion, ECF No.23 ("M&B Br."), 1. M&B's only "evidence" is that Cortica, LTD gave M&B Power of Attorney for its patent filings, and a few stray emails. Id., 2. Cortica, LTD granted M&B Power of Attorney solely at eNitiatives' direction. Certification of Karina Odinaev in Further Support of Motion ("Odinaev Reply Cert."), ¶ 2; Ex. D, at 39-40 (eNitiatives seeking confirmation from Cortica, LTD to file a patent application that includes a Power of Attorney for M&B). eNitiatives, which Cortica, LTD directly engaged to manage its entire patent portfolio, contracted with M&B to carry out eNitiatives' management work in the U.S. Id., ¶ 3. The Power of Attorney was a technical requirement for M&B to do so. Id., ¶ 4. Cortica, LTD granted M&B's predecessor Myers Wolin ("MW") the same. Id., ¶ 5.

Cortica, LTD's direct relationship with eNitiatives is the only way M&B provided services and that dynamic demonstrates the absence of a direct

3

relationship between Cortica, LTD and M&B. Since 2008, Cortica, LTD has contracted with eNitiatives to manage its patent portfolio. To handle Cortica, LTD's U.S. patent work, eNitiatives hired MW, with M&B's eventual founder, Michael Ben-Shimon ("Ben-Shimon), a former eNitiatives employee, doing much of the work. In 2014, Ben-Shimon founded M&B and took eNitiatives' Cortica, LTD-related business with him. Id., ¶¶ 6-9.

M&B's distinction between eNitiatives' and M&B's work on Cortica, LTD's patents is a false one. M&B claims eNitiatives' work "was a different and broader remit" than M&B's. M&B Br., 4. eNitiatives was responsible for Cortica, LTD's **overall** international patent portfolio and filing strategy, **including Cortica, LTD's U.S. patents**, as evidenced by reports eNitiatives prepared for 2015, 2016 and 2018 regarding Cortica, LTD's entire patent portfolio. Odinaev Reply Cert., ¶ 10; Exs. A-C. M&B's work was part of the services for which Cortica, LTD contracted with eNitiatives. Id., ¶ 11. eNitiatives hired M&B because it did not have anyone to file patent applications in the U.S.; Cortica, LTD had no direct involvement with M&B's work. Id., ¶ 12. Cortica, LTD did not even know M&B existed until M&B suddenly sent Cortica, LTD an invoice in June 2014 and eNitiatives told Cortica, LTD (after Cortica, LTD asked eNitiatives about it) that M&B has replaced MW. Id., ¶ 13, Ex. K. Cortica, LTD understood this to mean eNitiatives engaged M&B to replace MW as eNitiatives' contractor. Id., ¶ 14.

eNitiatives (negligently) created Cortica, LTD's patent management budget that included M&B's and USPTO fees, instructed M&B as to what patents work to do, and worked with M&B to draft and revise the documents filed with the USPTO. Id., ¶ 15, Exs. D-H. When M&B's invoices exceeded this budget, Cortica, LTD asked eNitiatives, **not M&B**, why, and eNitiatives told M&B to cease all work. Id., ¶ 16, Ex. I. eNitiatives ultimately negotiated a 10% discount from M&B on Cortica, LTD's behalf. Id., ¶ 17, Ex. J.

Any work M&B did on Cortica, LTD's patents was done at eNitiatives' direction, a fact M&B tries to obscure through its disingenuous recitation. Cortica, LTD never reached any agreement with M&B, especially for M&B to perform any work for it. Id., ¶ 18. eNitiatives, not Cortica, LTD, is the proper party to answer to M&B and to Cortica, LTD. Id., ¶ 19. M&B's claim that its limited, immaterial communications with Cortica, LTD concerning M&B's work on Cortica, LTD's patents establishes a contractual relationship between the parties. M&B Br., 2-4, **is false**. "A meeting of the minds, or mutual assent is one of the required elements of such a contract." Knight v. New Eng. Mut. Life Ins. Co., 220 N.J. Super. 560, 565 (App. Div. 1987) (citations omitted). None of the communications identified by

M&B (or any others) evince the requisite mutual assent. They support that eNitiatives engaged M&B to carry out eNitiatives' duties to Cortica, LTD.[2]

As the exhibits to the Ben-Shimon Certification show, M&B's emails with Cortica, LTD, sent mostly by M&B's paralegal (not an attorney or patent agent), were not substantive in nature, but concerned ministerial functions such as payment and notifications of office actions and deadlines and, even then, eNitiatives was included. Odinaev Reply Cert., ¶ 20. Exhibits D-F (ECF Nos. 23-4 to -6) are merely requests by M&B for payment. eNitiatives' representatives (Reuven Marko and Or Agassi) are cc'd. In Exhibit D, Cortica, LTD's employee inquires about MW's invoices, confirming that M&B replaced MW as eNitiatives' contractor for its work for Cortica, LTD. Exhibit G (ECF No. 23-7) just concerns the housekeeping item of paying annual patent fees, and includes a request for payment from Cortica, LTD to M&B. Marko and Agassi are cc'd.

Exhibit H (ECF No. 23-8) to the Ben-Shimon Certification merely concerns M&B notifying Cortica, LTD that it received a Non-Final Office Action from the USPTO and an extension to respond and, again, requesting payment. Again, Marko and Agassi were cc'd. Id. M&B notified Cortica, LTD and eNitiatives jointly of updates and deadlines, but only eNitiatives, not M&B, provided legal explanations

---

[2] M&B cannot recover anything under its quantum meruit theory, as M&B did not perform any services for Cortica, LTD (but, rather, for eNitiatives). See Starkey v. Estate of Nicolaysen, 172 N.J. 60, 68 (2002) (internal quotation omitted).

6

and advice. Odinaev Reply Cert., ¶ 21. M&B did not provide a single email in which it provides such legal advice to Cortica, LTD. Its ministerial emails concerning payment or notice, to which Marko and Agassi were cc'd, do not establish an agreement between Cortica, LTD and M&B. Many of these emails are simply templates providing the same basic information that the USPTO took an action, and the relevant dates. See, e.g., Id., ¶ 26, Exs. L-P; Ben-Shimon Cert., Exs. G-H. Notably, after M&B would send these emails, eNitiatives (Marko or Agassi) would take over by providing substantive legal advice and analysis and asking Cortica, LTD for approval of work. See Odinaev Reply Cert., ¶ 23; Exs. L-P. For example, in Exhibit L to the Odinaev Reply Certification, an M&B paralegal notified Cortica, LTD and eNitiatives that:

> We have received a communication from the USPTO with regard to this application. . . . A response to the Office Action is due by **1 May 2016**, after which time USPTO Extensions may be available until 1 August 2016, upon payment of additional fees that increase on a monthly basis.

eNitiatives then sent an email to Cortica, LTD providing substantive legal advice and asking Cortica, LTD for approval of work, excluding M&B.

Exhibits M-O contain virtually the same language from M&B,[3] and are followed by advice from eNitiatives which excludes M&B. In each, Cortica, LTD then gives eNitiatives approval to act however eNitiatives advised, again with

---

[3] The language in Exhibit P is a little different only because it is notifying Cortica, LTD of a different action by the USPTO (a "Notice of Allowance and Issue Fee(s) Due"). It still merely states that the USPTO issued the Notice, the date fees are due, asks if Cortica, LTD would like M&B to convey anything to the Examiner, and requests payment. Odinaev Reply Cert., Ex. P.

7

M&B not on the email. eNitiatives presumably conveyed Cortica, LTD's approvals to M&B, but Cortica, LTD was not a part of those communications, as that was solely a part of eNitiative's work with M&B. Id., ¶ 24. In one particularly telling instance, M&B filed a Notice of Abandonment of one of Cortica, LTD's patent applications without Cortica, LTD's approval. Id., Ex. Q. Although M&B stated that it acted on Cortica, LTD's instructions, when Cortica, LTD pressed M&B, M&B's only evidence of approval to file the Notice was an email chain between eNitiatives and M&B that did not include Cortica, LTD, where eNitiatives provided approval based on M&B's advice to eNitiatives. Id., Ex. R.

M&B is a party in the Israeli Litigation between Cortica, LTD, eNitiatives and M&B. There, eNitiatives sued Cortica, LTD in the District Court of Tel Aviv-Jaffa to recover allegedly-unpaid invoices, including for work performed by M&B (one of Cortica, LTD's main arguments is that it was fraudulently double-billed by eNitiatives and/or M&B). Id. at ¶ 27. Cortica, LTD filed a counter-complaint against M&B and, as required by Israeli procedural rules, an ex-parte Motion for Leave of Service Outside of Jurisdiction which the Court granted, making M&B a party to the case. Id. at ¶ 30, Exs. S-T.

### B.   These Facts do not Support Personal Jurisdiction over Cortica, LTD

Cortica, LTD's incidental contacts with M&B are insufficient for personal jurisdiction. Because M&B has not argued that this Court has general jurisdiction

over Cortica, LTD, the Court may only consider specific jurisdiction. Pennzoil Prods. Co. v .Colelli & Assocs., Inc., 149 F.3d 197, 200-01 (3d Cir. 1998). This Court does not have specific personal jurisdiction over Cortica, LTD.

Preliminarily, M&B is incorrect that the Court must assume as true all facts asserted in M&B's Complaint. See M&B Br., 5, 10.[4] Patterson v. FBI, 893 F.2d 595, 603-04 (3d. Cir. 1990). See also FastShip, LLC v. Lockheed Martin Corp., 2018 U.S. Dist. LEXIS 113575, at *23-24 (D.N.J. June 25, 2018) (quotations omitted). M&B has the burden of demonstrating Cortica, LTD's "contacts with the forum were instrumental in either the formation of the contract or its breach." Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001) (citation omitted). M&B has not met its burden, as **Cortica, LTD never directly engaged M&B**. Thus, this Court does not have jurisdiction over Cortica, LTD.

Moreover, M&B's emails to Cortica, LTD do not change this conclusion, as they were merely incidental to M&B's contract with eNitiatives as set forth above. The cases M&B cited in its opposition, at 8-10, are inapposite because, in each, the defendant entered into an agreement with the plaintiff, and took active steps to do

---

[4] M&B's citation to Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93 (3d Cir. 2004) on page 5 of its Opposition Brief is taken out of context. The full quotation is: "However, **when the court does not hold an evidentiary hearing on the motion to dismiss**, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." Id. at 97 (emphasis added). Given the extensive factual questions here, Cortica respectfully requests an evidentiary hearing to resolve any factual disputes the Court may have after reviewing the parties' submissions.

9

so.[5] M&B directed its communications to Cortica, LTD in Israel, and Cortica, LTD was involved only as required to ensure eNitiatives could fulfill its duties to Cortica, LTD. This is not enough for personal jurisdiction over Cortica, LTD here.

Exercising personal jurisdiction over Cortica, LTD offends traditional notions of fair play and substantial justice. M&B contends that "[i]t is fundamentally fair and foreseeable that Cortica would be subject to jurisdiction in New Jersey." M&B Br., 13. Cortica, LTD never sought to do business with M&B, or anyone in New Jersey or even the U.S. It hired eNitiatives to handle its patent needs, including contracting with an individual in the U.S., if eNitiatives determined that was needed. Cortica, LTD did not know eNitiatives contracted with M&B until it received an invoice from M&B. Thus, it is fundamentally unfair and unforeseeable that Cortica, LTD would be haled into this Court.

M&B does not even contend the factors considered in making this determination weigh in its favor, as Cortica, LTD did in its Opening Brief, 12-16, which M&B did not address. M&B becoming a party to the Israeli Litigation further supports Cortica, LTD's position, as it:

> (1) increases Cortica, LTD's burden of litigating, because this litigation will duplicate the Israeli Litigation, but lacks a necessary party, eNitiatives;

---

[5] These cases are further distinguishable on other bases. For example, in at least one the contract included a choice of law provision. See Burger King v. Rudzewicz, 471 U.S. 462, 481 (1985). In another, also cited by M&B, see M&B Br. 10, as part of contract negotiations, the defendant sent countless faxes, letters and materials to the plaintiff in the forum state, had numerous calls with the plaintiff there, and even had a physical meeting in the U.S. Kultur Int'l Films Ltd. v. Covent Garden Pioneer FSP, Ltd., 860 F.Supp. 1055, 1058-59 (D.N.J. 1994). None of this occurred here.

(2) makes Israel the only court that can provide M&B convenient and effective relief, because only it can fully consider eNitiatives' role, including Cortica, LTD's defenses that M&B's services were deficient and M&B and eNitiatives fraudulently double-billed Cortica, LTD;

(3) further demonstrates that this Court has little interest in adjudicating this dispute, because doing so would be futile without eNitiatives and would only increase the risk of inconsistent rulings;

(4) strengthens the international judicial system's interest in having the Israeli court hand down full relief to all parties, rather than partial relief between M&B and Cortica; and

(5) evidences Israel's now-stated interest in resolving this matter.

M&B filed this lawsuit **the day after** eNitiatives initiated the Israeli Litigation, which suggests a coordinated effort to artificially divert the intertwined claims into two matters, to Cortica, LTD's detriment and in order to put economic pressure on Cortica, LTD. Dismissing this case in favor of the Israeli Litigation is the only way to ensure effective relief and avoid duplicative efforts and the risk of inconsistent rulings, and best carries out the interests of this Court, the Israeli Court and the international judicial system as a whole. Exercising personal jurisdiction here does not comport with the notions of fair play and substantial justice.

## II.   FORUM NON CONVENIENS WARRANTS DISMISSAL OF M&B'S COMPLAINT

A forum non conveniens dismissal is appropriate where, as here, "trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience." Miller v. Bos. Sci. Corp., 380 F. Supp. 2d

443, 452 (D.N.J. 2005).[6] Without citing case law, M&B claims Israel is an inadequate forum because M&B has no physical presence there. M&B Br. 15. This is incorrect. Cortica has already met its burden to provide evidence that Israel is an adequate forum. Miller, 380 F. Supp. 2d at 447-48 (citation omitted). Opening Br., 20-21. M&B has offered nothing to the contrary.

M&B has a significant presence in Israel. This dispute arose because M&B knowingly and intentionally agreed to perform work for an Israeli company (eNitiatives) concerning the patents of another Israeli company (Cortica, LTD). To say that "there is no nexus with Israel with the subject of this action," M&B Br. 15, when M&B sued an Israeli company to recover fees incurred because of its agreement with another Israeli company (eNitiatives, where M&B's owner and founder, Ben-Shimon, once worked), is false. The Israeli court clearly thought otherwise when it permitted Cortica, LTD to sue M&B in Israel.

Contrary to M&B's assertion (M&B Br., 15-16), the private factors weigh in Cortica's favor. While M&B's evidence may be in the U.S., Cortica, LTD's and eNitiatives' is not. **Cortica, LTD does not have any employees or offices in the**

---

[6] Unlike the above-quoted language, the cherry-picked language M&B quotes from Miller and others cases do not fully capture the analysis required for forum non conveniens. Further, M&B's reliance on Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981) to claim its choice of forum should be "afforded the utmost deference" is misleading. M&B Br., 15. In Piper, the Supreme Court, in rejecting the notion that unfavorable law in a foreign court prohibits a forum non conveniens dismissal, explained that a domestic plaintiff choosing its home forum was entitled to greater deference than a foreign plaintiff choosing a U.S. forum, which is not what occurred here. Id. at 247-51, 255-56. In any event, the Court recognized that this deference is overcome when, like here, the public and private factors warrant. Id. at 257.

**U.S.** Odinaev Reply Cert., ¶ 29. Neither Cortica-US, Inc. nor any of its employees have any knowledge of or involvement with this matter. Id., ¶ 30. Even M&B's own allegations do not support jurisdiction in any U.S. court. Ben-Shimon claims that Cortica, LTD employees Odinaev and Igal Raichelgauz lived and worked in New York in 2014-15, and that he met with them then. Ben-Shimon Cert., ¶¶ 22-24. This does not show that any relevant evidence is in the U.S. today, or has been recently. Odinaev and Raichelgauz currently live and work in Israel, as they have for years. Odinaev Reply Cert., ¶ 31. Their knowledge and documents are in Israel and likely outside this Court's subpoena power. Miller, 380 F. Supp. 2d at 452.[7]

Unaddressed by M&B, eNitiatives has information crucial to this matter that is not in the U.S., including the nature, extent, and quality of M&B's work on Cortica, LTD's patents, the agreed rate for it, and the accuracy of M&B's invoices. This evidence is exclusively in Israel. M&B admitted this when it named Agassi and Marko as individuals with discoverable information and Israeli addresses. Cole Cert., Ex. B. Given the contested Israeli Litigation, eNitiatives likely will not cooperate in producing this evidence, nor can this Court likely compel it.

The public factors further support dismissal. M&B is already a party to the Israeli Litigation, and its claims are inextricably intertwined therewith. Cortica, LTD may have indemnification and/or contribution claims against eNitiatives in

---

[7] If this case were dismissed and refiled in Israel and any relevant evidence existed in the U.S., the parties can easily obtain it by bringing a simple proceeding under 28 U.S.C. § 1782.

13

this litigation pursuant to the contract between them. However, that contract is governed by Israeli law and contains a forum selection clause naming Tel Aviv, Israel. Odinaev Reply Cert., ¶ 32. Whether Cortica, LTD can bring those claims in this Court would require this Court to consider complicated choice of law and international law principles, as well as Israeli contract principles. M&B merely seeks recovery of allegedly-unpaid invoices. In resolving the Israeli Litigation, the Israeli Court will be in a better position to determine what, if anything, M&B is owed, and from whom. If this requires analyzing U.S. law, that will be far more straightforward than complicated contract and indemnification/contribution issues.

### III.  M&B'S COMPLAINT FAILS TO INCLUDE A REQUIRED PARTY

M&B's disingenuous attempts to downplay eNitiatives' critical role in this litigation should be disregarded. It is beyond dispute that eNitiatives engaged M&B to perform work on Cortica, LTD's patents as part of the services for which Cortica, LTD contracted eNitiatives. Otherwise, M&B would not have included eNitiatives employees on its emails to Cortica, LTD.

**What is missing from M&B's brief is critical**. M&B claims that "eNitiatives did not direct M&B's work for Cortica." M&B Br., 18. M&B offers no evidence or explanation for how M&B knew what work to perform for Cortica, LTD, and nothing showing Cortica, LTD requesting M&B provide any services for its patents (aside from paying a small fee). This is because M&B took its direction

from eNitiatives, often without Cortica, LTD involved at all (which explains why Cortica, LTD cannot provide documentary evidence of this, and demonstrates the need for eNitiatives' evidence). Odinaev Reply Cert., ¶ 33. Cortica, LTD's involvement was solely to instruct eNitiatives, not M&B. Id., Ex. L-P.

M&B continued, claiming "eNitiatives [did not] bill Cortica for services provided by M&B." M&B Br., 18 (citing Ben-Shimon Cert. ¶ 34). If eNitiatives had no role in M&B servicing Cortica, LTD's patents, how could Ben-Shimon know for what eNitiatives did and did not bill Cortica, LTD? Whether eNitiatives and M&B double-billed Cortica, LTD for each other's work is central to the Israeli Litigation. Odinaev Reply Cert. ¶ 34. eNitiatives (negligently) planned Cortica, LTD's patent budget, and controlled M&B's work on Cortica, LTD's U.S. patents. Without eNitiatives, the story here is incomplete, and full relief cannot be formed. Any ruling by the Court could harm eNitiative's interests in the Israeli Litigation. The Israeli court is perfectly situated to provide full and complete relief for this entire dispute. As such, dismissal under F.R.C.P. 12(b)(7) is warranted.

## CONCLUSION

For these reasons, Cortica respectfully requests that this Court grant its motion and dismiss M&B's complaint against it.

**FLASTER/GREENBERG P.C.**
Attorneys for Defendants Cortica-US, Inc. and Cortica, LTD

Dated: August 12, 2019     By: /s/ *Adam E. Gersh*
Adam E. Gersh, Esquire

15