Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| M&B IP ANALYSTS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CORTICA-US, INC., *et al.*,<br><br>Defendants. | Civil Action No. 19-0429 (ES) (SCM)<br><br>OPINION |

SALAS, DISTRICT JUDGE

Before the Court is defendants Cortica-US, Inc. ("Cortica-US") and Cortica, LTD's ("Cortica LTD") (collectively, "Cortica")[1] motion to dismiss plaintiff M&B IP Analysts, LLC's ("M&B") complaint based on (i) lack of personal jurisdiction; (ii) the doctrine of *forum non conveniens*; and (iii) failure to join an indispensable party. (D.E. No. 15). Having considered the parties' submissions and having held oral argument on May 5, 2020, the Court now DENIES the motion to dismiss.

## I.      Background

M&B employs a number of patent professionals to assist clients with patent prosecution and related services, including drafting and filing patent applications, responding to United States Patent and Trademark Office ("USPTO") communications, and assisting with patent annuity monitoring and maintenance. (D.E. No. 1 ("Complaint" or "Compl.") ¶¶ 9 & 11). M&B is a limited liability company with its principal place of business in New Jersey. (*Id.* ¶ 3).

---

[1]      Many of the allegations in the complaint reference "Cortica," collectively referring to both Cortica, LTD and Cortica-US. (Compl. ¶ 7). Thus, the Court does the same when discussing the allegations in the complaint. However, because Cortica-US only joins in portions of the motion to dismiss, the Court will, at times, refer to a specific entity.

M&B alleges that "[o]n or about April 2014, Cortica directly engaged M&B to file patents with the USPTO, coordinate filing in various jurisdictions, prosecute patent applications with the USPTO, and perform annuity monitoring and maintenance on its behalf." (*Id.* ¶ 13). According to the Complaint, M&B performed a variety of patent prosecution services for Cortica from April 2014 to April 2018. (*Id.* ¶ 15). M&B alleges that Cortica approved and explicitly authorized all work that it performed (*id.* ¶ 16), and that it sent Cortica regular invoices for its services and disbursements (*id.* ¶ 20). Cortica made periodic payments directly to M&B from April 2014 through May 2017, but M&B alleges that Cortica began making delayed payments in June 2017. (*Id.* ¶¶ 20–23).

In April 2018, Cortica informed M&B that it would no longer use M&B's services. (*Id.* ¶ 18). While Cortica was transitioning its patent representation, M&B continued to perform various tasks for Cortica through June 2018. (*Id.* ¶¶ 18–19). According to the Complaint, as of June 2018, Cortica owed M&B an outstanding balance of $275,143.00 for work dating back to June 2017. (*Id.* ¶ 23). Of the total open balance, $64,643.00 represents disbursements paid directly to the USPTO by M&B on Cortica's behalf. (*Id.*). To recover the unpaid balance, M&B now sues Cortica for breach of contract, unjust enrichment, and account stated. (*Id.* ¶¶ 26–46).

On June 3, 2019, Cortica filed a motion to dismiss, disputing many of the allegations in the Complaint relating to the relationship between it and M&B. As a preliminary matter, Cortica claims that Cortica-US, Cortica, LTD's wholly-owned subsidiary, has no relevance to this lawsuit and was inappropriately added to the Complaint. (D.E. No. 15-1 ("Def. Mov. Br.") at 2). Cortica claims that it did not hire M&B, but that it actually hired a third-party company called eNitiatives IP Ltd. ("eNitiatives") for its patent-related needs. (Def. Mov. Br. at 1; D.E. No. 15-6 ("Odinaev Cert.") ¶ 9). Cortica further argues that it has no direct relationship with M&B, and that any work

M&B performed for Cortica was done at eNitiatives' direction.  (Def. Mov. Br. at 1–2; Odinaev Cert. ¶¶ 17 & 21).  Cortica also explains that Cortica, LTD is currently litigating with eNitiatives in Israel.  (Def. Mov. Br. at 1; Odinaev Cert. ¶¶ 19 & 22).  According to Cortica, eNitiatives sued Cortica for certain unpaid balances, and M&B initiated this action a day later.  (D.E. No. 31 ("Def. Reply Br") at 11).  Cortica, LTD has counter-sued both eNitiatives and M&B in the Israeli litigation.  (Def. Mov. Br. at 7; Odinaev Cert. ¶ 20).  Based on this set of facts, Cortica moves to dismiss the Complaint based on (i) lack of personal jurisdiction over Cortica, LTD; (ii) *forum non conveniens*; and (iii) failure to join an indispensable party.  (*See generally* Def. Mov. Br.).  In support of its motion, Cortica submitted two declarations from its Chief Operations Officer and Chief Intellectual Property Officer, as well as a number of exhibits.  (*See generally* Odinaev Cert.; D.E. No. 15-7; D.E. No. 19; D.E. No. 31-1 ("Odinaev Reply Cert."); D.E. Nos. 31-2 to 31-21).

M&B opposes the motion and provides a competing declaration stating, among other things, that Cortica "mischaracterizes and misstates the direct contractual relationship" between the parties.  (D.E. No. 23 ("Ben-Shimon Cert.") ¶ 2).  M&B disputes the extent of eNitiatives' involvement in the parties' relationship, and claims that the pending Israeli litigation "does not involve M&B."  (*Id.* ¶ 32; D.E. No. 24 ("Pl. Opp. Br.") at 1–4).  M&B also includes a number of exhibits for the Court's consideration.  (*See* D.E. Nos. 23-1 to 23-9).

Having now considered the submissions and arguments presented by counsel on May 5, 2020 (D.E. No. 37), the Court DENIES the motion to dismiss.

## II.    Legal Standards

### A.    12(b)(2) Motion to Dismiss

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), a plaintiff bears the burden of establishing the court's personal jurisdiction over the moving defendants by a

preponderance of the evidence. *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). "However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93, 97 (3d Cir. 2004). Still, the plaintiff must establish "with reasonable particularity sufficient contacts between the defendant and the forum state" to support jurisdiction. *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). And the plaintiff must establish these "jurisdictional facts through sworn affidavits or other competent evidence . . . . [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." *Miller Yacht Sales*, 384 F.3d at 101 n.6. Indeed, the plaintiff must respond to the defendant's motion with "actual proofs"; "affidavits which parrot and do no more than restate [the] plaintiff's allegations . . . do not end the inquiry." *Time Share Vacation Club v. Atl. Resorts, Ltd*., 735 F.2d 61, 66 & n.9 (3d Cir. 1984).

**B.      *Forum Non Conveniens***

Under the common law doctrine of *forum non conveniens*, a district court may dismiss a case if "a court abroad is the more appropriate and convenient forum for adjudicating the controversy." *Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007). The decision to dismiss a case on *forum non conveniens* grounds rests in the sound discretion of the trial court. *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 188–89 (3d Cir. 2008). "The district court is accorded substantial flexibility in evaluating a *forum non conveniens* motion, and each case turns on its facts." *Id.* at 188 (internal quotation marks omitted).

It is the defendant, as the moving party, that bears the burden of satisfying all elements in a *forum non conveniens* inquiry. *Windt v. Qwest Commc'ns Int'l, Inc.*, 544 F. Supp. 2d 409, 415–16 (D.N.J. 2008). The district court's inquiry does not necessarily require extensive investigation, and the issue may be resolved based on affidavits presented by the parties. *Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 614 (3d Cir. 1991).

### C.    12(b)(7) Motion to Dismiss

Finally, in reviewing a Rule 12(b)(7) motion to dismiss, "the court must accept all factual allegations in the complaint as true and draw all reasonable inferences therefrom in favor of the non-moving party." *Malibu Media, LLC v. Tsanko*, No. 12-3899, 2013 WL 6230482, at *7 (D.N.J. Nov. 30, 2013). But when making a determination pursuant to Federal Rule of Civil Procedure 19, a court may consider evidence outside of the pleadings. *Mediterranean Shipping Co. (USA) Inc. v. Shandex Corp.*, No. 16-2595, 2017 WL 1129593, at *2 (D.N.J. Mar. 23, 2017).

## III.   Analysis

### A.    Personal Jurisdiction

A federal court has jurisdiction over a nonresident defendant to the extent authorized by the law of the state in which the court sits, so long as the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. Fed. R. Civ. P. 4(e); *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1996). The New Jersey Long Arm Rule permits the assertion of in personam jurisdiction as far as it is constitutionally permissible under the Due Process Clause. N.J. Court Rule 4:4–4; *Cartaret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 145 (3d Cir. 1992). In turn, personal jurisdiction under the Due Process Clause depends upon "the relationship among the defendant, the forum, and the litigation . . . ." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). That is, the Due Process Clause requires the plaintiff

to show that the nonresident defendant "has purposefully directed its activities toward the residents of the forum state, . . . or otherwise 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

Specific jurisdiction[2] arises from "'an affiliation between the forum and the underlying controversy,'" and a district court exercising specific jurisdiction "'is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Bristol–Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  For specific jurisdiction to exist, a district court must determine that (i) the defendant "purposefully directed its activities at the forum"; (ii) the litigation "arises out of or relates to at least one of those activities"; and (iii) the exercise of jurisdiction would "otherwise comport with fair play and substantial justice." *O'Connor v. Sandy Lane Hotel*, 496 F.3d 312, 317 (3d Cir. 2007) (cleaned up).

"The first two parts of the test determine whether a defendant has the requisite minimum contacts with the forum." *Pilatus Aircraft*, 566 F.3d at 102.  In considering minimum contacts and purposeful availment in contract cases, courts must consider "the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." *Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001).  With respect to the second prong, the Third Circuit has instructed that the analysis should begin with but-for causation.  *Colvin v. Van Wormer Resorts, Inc.*, 417 F. App'x 183, 187 (3d Cir. 2011) (citing *O'Connor*, 496 F.3d at 322).  This requires a showing that "the plaintiff's claim would not

---

[2]     The Court's personal jurisdiction analysis focuses on specific jurisdiction because M&B offers no argument to suggest that the Court has general jurisdiction over Cortica, LTD.  (*See generally* Pl. Opp. Br.).

have arisen in the absence of the defendant's contacts."  *O'Connor*, 496 F.3d at 319.  However, "[b]ut-for causation is not enough: 'the defendant's contacts with the forum must have been instrumental in either the formation of the contract or its breach.'"  *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 130 (3d Cir. 2020) (quoting *General Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) (alterations omitted)).  "The appropriate analysis is fact-intensive, and must focus on the 'reciprocity principle upon which specific jurisdiction rests,' *i.e.,* whether through purposeful contact with the forum the defendant received benefits and protections of that forum's laws such that the defendant should, as a quid pro quo, submit to the burden of litigating in that forum."  *Watiti v. Walden Univ.*, No. 07-4782, 2008 WL 2280932, at *9 (D.N.J. May 30, 2008) (quoting *O'Connor*, 496 F.3d at 323).

With respect to the third prong, the Supreme Court has identified several factors that courts should consider when balancing jurisdictional reasonableness: (i) the burden on the defendant; (ii) the forum state's interest in adjudicating the dispute; (iii) the plaintiff's interest in obtaining convenient and effective relief; (iv) the interstate and international judicial system's interest in obtaining the most efficient resolution of controversies; and (v) the procedural and substantive interests of other nations.  *O'Connor*, 496 F.3d at 324.

To start, the Court finds that Cortica, LTD purposefully directed its activities at the state of New Jersey.  Cortica, LTD argues that it did not purposefully direct its activities at New Jersey because it hired eNitiatives, an Israeli-based company for its patent needs, and that eNitiatives engaged M&B without Cortica's consent.  (Def. Mov. Br. at 12).  Thus, Cortica, LTD claims that it "had no knowledge of M&B" until 2014 when M&B started sending it invoices, and that it had no reason to know where M&B operated its business.  (Def. Mov. Br. at 6 & 13; Odinaev Cert. ¶¶ 14–15).  According to Cortica, LTD, the relationship between it and M&B remained entirely

"indirect," involved only "immaterial communications," and any work M&B did for Cortica was performed at eNitiatives' direction.  (Def. Mov. Br. at 1; Def. Reply Br. at 5–6).

It may be true that, initially, Cortica, LTD had no knowledge of M&B, and that M&B was hired either by or at the direction of eNitiatives.  Even so, that was in 2014, and "the intention to establish a common venture extending over a substantial period of time is a more important consideration" than whether "one or the other party initiated the relationship."  *General Elec.*, 270 F.3d at 151.  Declarations and exhibits submitted by both sides in this case demonstrate that (i) Cortica, LTD became aware of M&B at least as of July 2, 2014 (D.E. No. 31-12 at 2 (ECF Pagination));[3] (ii) in 2014, Ms. Odinaev signed a power of attorney, making M&B Cortica LTD's patent agent in the United States to file patents with the USPTO  (Ben-Shimon Cert ¶ 3; D.E. Nos. 23-1 & 23-2); (iii) Cortica, LTD communicated with M&B to approve various work M&B was to do on Cortica, LTD's behalf (*see* D.E. Nos. 23-7 at 2 & 23-8 at 2–3);[4] (iv) Cortica, LTD received email communications that identify M&B's place of business in New Jersey (*see, e.g.*, D.E. Nos. 23-4, 23-7 & 23-8); (v) Cortica, LTD routinely received, approved, and paid various invoices sent by M&B (D.E. Nos. 23-4, 23-5, 23-6 & 23-8); (vi) wire transfer instructions directed Cortica, LTD to M&B's bank account in New Jersey (D.E. No. 23-6 at 7 (ECF Pagination); D.E. No. 23-8 at 5–9 (ECF Pagination)); and (vii) over the course of their relationship, Cortica, LTD paid directly to

---

[3]     Prior to this point, Cortica was aware that a U.S. law firm, Myers Wolin, LLC, was performing its work in the United States, and that Michael Ben-Shimon performed much of the work provided to Cortica by Myers Wolin. (Odinaev Cert. ¶¶ 10 & 13).  In 2014, Michael Ben-Shimon founded M&B and took the Cortica- related business with him.  (Odinaev Reply Cert. ¶ 9).  On July 2, 2014, Cortica became aware of this change, when it received the first invoices from M&B.  (D.E. No. 31-12 at 2 (ECF Pagination)).

[4]     Cortica, LTD argues that the majority of the communications are non-substantive or immaterial.  The Court is not certain that all communications can be classified as such without more context.  In any event, repeated informal communications may serve as a basis for establishing personal jurisdiction, especially where there are other supporting facts.  *Remick*, 238 F.3d at 256 (finding personal jurisdiction over a defendant based on payment sent to the forum state and repeated informal communications during the course of the relationship).

M&B approximately $731,392.67 for its work (Ben-Shimon Cert. ¶ 9).  Thus, the record evidence in this case demonstrates that, after four years of continued business, Cortica, LTD had knowledge of the work M&B performed on its behalf in New Jersey, and that Cortica, LTD purposefully availed itself of this relationship.  *See Malek v. Chef's Roll, Inc.*, No. 18-03205, 2019 WL 3854303, at *5 (D.N.J. Aug. 16, 2019) (concluding that plaintiff "provided enough evidence for the Court to reasonably infer that [d]efendant knew or should have known its conduct was directed at New Jersey").

Second, this litigation arises out of the actions just described.  Specifically, M&B alleges that the course of conduct described above resulted in some sort of contractual relationship between the parties, and pursuant to that contract M&B was to perform certain patent work on Cortica's behalf, and Cortica would compensate M&B for that work.  (*See generally* Compl.).  In other words, but for Cortica's continued contacts with M&B that allegedly established a contractual relationship, M&B would not have performed patent work on Cortica's behalf and would not have incurred the claimed damages.  In addition, "[t]he link is [ ] much closer than mere but-for causation."  *O'Connor*, 496 F.3d at 323.  Where, as here, "the contract that was allegedly breached was consummated through documents and communications the defendant sent into this forum . . . and involves work plaintiff performed and for which payment was not received in New Jersey," the claims arise out of defendant's contacts with the forum.  *Bachmann Software & Sers. v. Intouch Grp., Inc.*, No. 08-2025, 2008 WL 2875680, at *11 (D.N.J. July 22, 2008); *see also Cargill Cocoa & Chocolate, Inc. v. Abco Labs., Inc.*, No. 13-06004, 2014 WL 4795028, at *12–14 (E.D. Pa. Sept. 26, 2014).

Finally, "[r]egarding the third prong, fair play and substantial justice, because [M&B] has made a prima facie case of minimum contacts, the burden is on [Cortica, LTD] to 'present

a *compelling* case that the presence of some other considerations would render jurisdiction unreasonable."  *See Malek*, 2019 WL 3854303, at *8 (quoting *O'Connor*, 496 F.3d at 324) (emphasis in original).  An analysis of the relevant factors reveals that Cortica, LTD has not made such a compelling case.  First, although litigating in a foreign country would undoubtedly burden Cortica, LTD, the Supreme Court has explained that "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 114 (1987).  Second, the alleged contract was performed primarily in New Jersey, by a New Jersey company, and it is here where the damages are felt. (Ben-Shimon Cert. ¶¶ 14–18).  Thus, the forum state has an interest in adjudicating the dispute, and M&B has an obvious interest in obtaining convenient and effective relief here.  *General Elec.*, 270 F.3d at 152.  With respect to the last two factors—the interstate and international judicial system's interest in obtaining the most efficient resolution of controversies, and the procedural and substantive interests of other nations— Cortica, LTD argues that Israel has the stronger interest in litigating this dispute based on the fact that both it and third-party eNitiatives are headquartered there and the existence of pending litigation in Israel.  (Def. Mov. Br. at 15–16).  The Court addresses the bulk of these arguments in the *forum non conveniens* and joinder analyses below. But for purposes of personal jurisdiction, the Court is not persuaded that any interest Israel may have in hearing this dispute is enough to create a compelling case that jurisdiction is *unreasonable* in New Jersey, in light of Cortica, LTD's minimum contacts with the forum.  *See Pro Sports Inc. v. West*, 639 F. Supp. 2d 475, 483 (D.N.J. 2009).  Accordingly, the Court concludes that asserting jurisdiction over Cortica, LTD would not offend notions of fair play and substantial justice.

Based on the foregoing the Court finds that is has specific personal jurisdiction over Cortica, LTD, and thus the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) is DENIED.

**B.    *Forum Non Conveniens***

Cortica next moves to dismiss based on the doctrine of *forum non conveniens*.  "Dismissal for *forum non conveniens* reflects a court's assessment of a range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality."  *Sinochem,* 549 U.S. at 429 (internal quotation marks omitted).

When considering a motion to dismiss on *forum non conveniens* grounds, the court must address: (i) the availability of an adequate alternative forum that can entertain the case; (ii) the amount of deference due to the plaintiff's forum of choice; (iii) the private interest factors; and (iv) the public interest factors.  *Windt*, 529 F.3d at 189–90.  The defendant must first satisfy the threshold inquiry of whether an adequate alternative forum exists; if the defendant does so, then the Court must balance convenience interests in light of the decree of deference plaintiff's choice of forum deserves.  *Id.*  The private interest factors include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Lony*, 935 F.2d at 609 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).  And the public interest factors include:

> the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of

> foreign law; and the unfairness of burdening citizens in an unrelated
> forum with jury duty.

*Id.* at 612 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).  "If the balance of these factors indicates that trial in the chosen forum would result in oppression or vexation to the defendant out of all proportion to the plaintiff's convenience," or if "the chosen forum is inappropriate due to the court's own administrative and legal problems," the district court may, in its discretion, dismiss the case on *forum non conveniens* grounds.  *Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA,* 623 F.3d 147, 160 (3d. Cir. 2010) (citing *Windt*, 529 F.3d at 189–90).

First, it appears that Israel would be an adequate alternative forum.  Ordinarily, the adequate alternative forum requirement is satisfied when the defendant is amenable to process in the other jurisdiction.  *Path to Riches, LLC ex rel. M.M.T. Diagnostics (2014), Ltd. v. CardioLync, Inc.*, 290 F. Supp. 3d 280, 286 (D. Del. 2018) (quoting *Piper Aircraft*, 454 U.S. at 255 n.22). Although Cortica does not expressly state whether it is amenable to process in Israel, it is undisputed that Cortica, LTD is a citizen of Israel with its principal place of business in Israel. (Compl. ¶ 5; Def. Mov. Br. at 1–2).  Moreover, M&B "has presented no evidence, or even argument, that a legal remedy would be unavailable to it in Israel."  *See Path to Riches*, 290 F. Supp. 3d at 287.  Thus, the Court presumes that Israel would be an adequate alternative forum.  *Id.* at 288 (concluding that Israel was an adequate alternative forum where defendants were amenable to process there); *see also Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 873 n.1 (3d Cir. 2013).

Second, because M&B is an LLC with two members—one a citizen of the state of New Jersey and one a legal permanent resident of New Jersey—and its principal place of business in New Jersey (Compl. ¶ 3), its choice of forum is entitled to considerable deference.  *Miller v. Bos. Sci. Corp.*, 380 F. Supp. 2d 443, 450 (D.N.J. 2005) ("The forum choice of a plaintiff suing in his

home state is entitled to a high degree of deference . . . ."); *Warner Tech. & Inv. Corp. v. Hou*, No. 13-7415, 2014 WL 7409978, at *4 (D.N.J. Dec. 31, 2014) (giving substantial deference to plaintiff's choice of forum where plaintiff alleged it was a New Jersey corporation located in New Jersey).  Without citing to case law, Cortica argues that the amount of deference to be given M&B's choice of forum is tempered when, as here, facts giving rise to the dispute occurred in another forum and where there is already ongoing litigation over intertwined issues in that forum. (Def. Mov. Br. at 21).  But as Cortica appears to acknowledge in its reply brief, the location of the conduct at issue and the existence of ongoing litigation are arguments that are better addressed in an analysis of the public and private interest factors, and such considerations can assist the Court in deciding whether such considerations *overcome* the deference to be afforded a plaintiff's choice of forum.  (Def. Reply Br. at 12 n. 6).[5]  Accordingly, the Court affords M&B's choice of forum considerable deference.

Third, the public and private interest factors do not clearly favor an alternative forum sufficient to overcome the presumption in favor of M&B's chosen forum.  With respect to the relevant private interest factors—relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; and all other practical problems that make trial of a case easy, expeditious, and inexpensive—neither party provides much detail about the expected witnesses, the materiality of their testimony, whether certain witnesses would appear at trial, and what types of documents are available or not available in one forum over another.  Cortica argues that "all relevant witnesses,

---

[5]      The Court acknowledges at least one District of New Jersey case where the court declined to award full deference to a plaintiff's choice of forum because "*most of* the facts giving rise to the Complaint" occurred in the alternative forum.  *Micklos v. Certify Glob., Inc.*, No. 18-14781, 2019 WL 2265343, at *4 (D.N.J. May 28, 2019) (emphases added).  But here, the facts giving rise to the complaint involve the performance of a contract in New Jersey and non-payment of that contract in New Jersey.  Thus, even under this case law Cortica does not meet its burden of showing that *most of* the facts occurred in Israel, and that M&B's choice of forum is entitled less deference on this basis.

-13-

including eNitiatives witnesses, and all relevant documents are in Israel." (Def. Mov. Br. at 21; *see also* Odinaev Cert. ¶ 22). M&B makes similar blanket statements, arguing that this Court "has easy access to a variety of sources of proof, including but not limited to M&B employees as witnesses, M&B's books and records, and communications between the parties, all of which can be found in New Jersey." (Pl. Opp. Br. at 15–16; Ben-Shimon Cert. ¶ 31). Such blanket statements about ease of access to unidentified witnesses and evidence, without an explanation of relevance, are not persuasive. *See Sec. Police & Fire Prof'ls of Am. Ret. Fund v. Pfizer, Inc.*, No. 10-3105, 2011 WL 5080803, at *7 n.2 (D.N.J. Oct. 25, 2011) (explaining that blanket statements about where discovery will be likely more convenient are inadequate); *Formula One Licensing BV v. Valentine*, No. 14-5812, 2016 WL 7175591, at *10 (D.N.J. Dec. 8, 2016). Cortica does provide some specificity, describing the types of documents that third party eNitiatives would have that are "crucial to this matter." (Def. Reply. Br. at 13). But Cortica goes on to state that "eNitiatives ***likely*** will not cooperate in producing this evidence, nor can this Court ***likely*** compel it." (*Id.*). Considering Cortica's burden on a motion to dismiss for *forum non conveniens*, these types of statements are also unpersuasive. *Networld Commc'ns, Corp. v. Croatia Airlines, D.D.*, No. 13-4770, 2014 WL 4724625, at *6 (D.N.J. Sept. 23, 2014) ("Defendants have failed to provide sufficient evidence for this Court to determine if these witnesses would not appear at trial and the materiality of their testimony."). Accordingly, the Court finds that at most "plaintiff's inconvenience to litigate abroad is roughly equal to defendant's inconvenience to litigate in New Jersey." *Tech. Dev. Co. v. Onischenko*, 536 F. Supp. 2d 511, 521 (D.N.J. 2007). And "[w]hen a court finds that the balance of private interest factors is close to 'equipoise' or even tipped toward the defendant, the court is constrained to conclude that the factors weigh in favor of retaining jurisdiction." *Onischenko*, 536 F. Supp. 2d at 522.

Cortica's arguments with respect to the public interest factors are similarly unpersuasive. The first factor—administrative difficulties flowing from court congestion—is not substantively addressed by the parties.  The Court notes that the District of New Jersey is currently facing a judicial crisis, with six judicial vacancies and no pending nominations.[6]  In addition, the District of New Jersey is faced with some of the highest case filing numbers in the country.[7]  But because the parties did not address the congestion of the Israeli courts, the Court cannot balance the relative congestion of dockets and will consider this factor neutral.  Second, it appears that both Israel and New Jersey have an interest in hearing this controversy.  Cortica heavily relies on its presence in Israel, eNitiatives' presence in Israel, and the pending Israeli litigation, in support of this factor. (Def. Reply Br. at 13).[8]  But as M&B argues, New Jersey also has an interest in hearing this case, "which involves a New Jersey patent agent doing work related to United States patents pursuant to a contract [to] which New Jersey law will apply."  (Pl. Opp. Br. at 16).  Thus, at best, both Israel and New Jersey have a local interest in having localized controversies decided at home, and that factor is also neutral.  Third, considering New Jersey's interest in this dispute, it would not be unfair to burden its citizens with jury duty.

Finally the Court considers the last two factors—the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; and the avoidance

---

[6]       *Current Judicial Vacancies*, USCOURTS.GOV, https://www.uscourts.gov/judges-judgeships/judicial-vacancies/current-judicial-vacancies (last updated Jun. 22, 2020).

[7]       For instance, in the 12-month period ending September 20, 2018, the District of New Jersey had 1,012 "weighted filings per authorized judgeship," while the same number for district courts across the country was 513. *U.S. District Courts—Weighted and Unweighted Filings per Authorized Judgeship—During the 12-Month Periods Ending September 30, 2017 and 2018*, USCOURTS.GOV, https://www.uscourts.gov/sites/default/files/data_tables/jb_x1a_0930.2018.pdf (last visited June 22, 2020).

[8]       Cortica's opening brief does not specifically address any of the public interest factors. (Def. Mov. Br. at 21–22). In its reply, Cortica addresses the public interest factors in a summary fashion. (Def. Reply at 13–14). Thus, the Court construes what it believes to be Cortica's arguments in support of each factor.

of unnecessary problems in conflict of laws, or in the application of foreign law—together.  Cortica

seemingly does not dispute that New Jersey law would apply to M&B's claims as alleged in the

Complaint.  (*See generally* Def. Mov. Br.; Def. Reply Br.).  But Cortica repeatedly asserts that it

was eNitiatives, not Cortica that hired M&B, and has suggested a type of sub-contractor

relationship among those parties.  (*See, e.g.*, Def. Mov. Br. at 1–2; Def. Reply Br. at 2).  If true,

the Court understands that Israeli law could potentially apply to M&B's claims.  But given the

Court's obligations at the motion to dismiss stage, the Court cannot simply accept eNitiatives'

assertions as true; indeed, many of Cortica's statements in this regard are legal conclusions about

contract formation that are not entitled to any weight.  (*See* Odinaev Cert. ¶ 17 (explaining that

Cortica "did not directly engage in any contract with M&B, and did not agree to any contractual

relationship with M&B"); Odinaev Reply Cert. ¶ 18 ("Cortica, LTD never reached any agreement

with M&B, especially for M&B to perform any work for it")); *see Pasqua v. Cty. of Hunterdon*,

No. 14-4203, 2016 WL 4253958, at *7 (D.N.J. Aug. 11, 2016), *aff'd,* 721 F. App'x 215 (3d Cir.

2018) (disregarding legal conclusions made in a certification); L. Civ. R. 7.2(a).  Cortica also

argues that if it is found liable to M&B, it would have indemnification claims and/or contribution

claims against eNitiatives in this litigation, which would require the application of Israeli law.

(Def. Mov. Br. at 25–26).[9]  But "considering [Cortica] bears the heavy burden of demonstrating

that dismissal is warranted, it would appear unfair for the Court to grant considerable weight to

this factor in light of Defendant's incomplete attempt to establish the applicability of international

law."  *See Miller*, 380 F. Supp. 2d at 456.  In any event, even if Israeli law does apply, that is "not

enough to compel dismissal of the complaint."  *Onischenko*, 536 F. Supp. 2d at 522.  Accordingly,

the Court finds that the public interest factors are also, at best, close to equipoise.

---

[9]      In its reply brief, Cortica states that it "*may*" have these indemnification and/or contribution claims, making
its argument as to the applicability of Israeli law less persuasive.  (Def. Reply Br. at 13–14).

In sum, the Court concludes that in light of the deference to be afforded Plaintiff's choice of forum and based on an analysis of the public and private interest factors, Cortica has not established "oppressiveness and vexation" to it "out of all proportion to the plaintiff's convenience." *Eurofins Pharma U.S. Holdings*, 623 F.3d at 160 (citing *Windt*, 529 F.3d at 190). As such, the motion to dismiss based on *forum non conveniens* is DENIED.

### C.   Failure to Join

Finally, Cortica argues that the Complaint should be dismissed for failure to join an indispensable party. (Def. Mov. Br. at 22). Federal Rule of Civil Procedure 12(b)(7) provides that a party may move to dismiss for failure to join an indispensable party under Federal Rule of Civil Procedure 19. The moving party must show that a non-moving party is necessary and indispensable under Rule 19 and therefore must be joined in the action. Pursuant to Rule 19(a)(1), a person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

If either subsection is satisfied, the absent party is a necessary party that should be joined if feasible. *Abuhouran v. KaiserKane*, Inc., No. 10-6609, 2012 WL 4027416, at *4 (D.N.J. Sept. 12, 2012). And if such a necessary party has not been joined, "the court must order that the person be made a party." Fed. R. Civ. P. 19(a)(2). However, if "a person who is required to be joined if

feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." [10]  Fed. R. Civ. P. 19(b).

Here, Cortica has not established that eNitiatives is an indispensable party.  Cortica does not articulate how eNitiatives is an indispensable party using the criteria set forth in the statute. Cortica argues that eNitiatives is a necessary party because "eNitiatives, and not Cortica, actually engaged M&B, and, therefore, is a contracting party herein."  (Def. Mov. Br. at 23).  Cortica also argues that "because Cortica, LTD has already been sued by eNitiatives in Israel concerning the same subject matter and asserted counterclaims against both eNitiatives and M&B, Cortica, LTD could ultimately be subject to double, multiple and/or inconsistent obligations to M&B and eNitiatives."  (*Id.*).  Both of these arguments are unpersuasive.

First, Cortica has not established that eNitiatives is a contracting party here.  Although the Court is permitted to consider evidence outside of the pleadings to make a Rule 19 determination, *Mediterranean Shipping*, 2017 WL 1129593, at *2, the Court must also keep in mind its obligation at the motion to dismiss stage to accept all factual allegations in the Complaint as true and draw all reasonable inferences therefrom in favor of the non-moving party.  *Malibu Media*, 2013 WL 6230482, at *7.  Starting with the Complaint, M&B makes no mention of any contract with eNitiatives and alleges that it performed under a contract with Cortica, and that Cortica failed to pay M&B money owed for such performance.  (*See generally* Compl.).  At oral argument, counsel for M&B acknowledged some involvement by eNitiatives in the initial relationship between the

---

[10]        The factors for the Court to consider for dismissal include:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

parties; however, M&B maintains that the contract here is one that is separate from any contract Cortica may have had with eNitiatives.  (Pl. Opp. Br. at 18 ("Any work that eNitiatives performed on Cortica's international patent portfolio was beyond M&B's remit, which was serving as patent agent and doing filings on behalf of Cortica for its United States patents with the USPTO."); Ben-Shimon Cert. ¶¶ 35–36).  In support of its allegations, M&B provides the Court with direct email communications between itself and Cortica as well as evidence of payments made directly from Cortica to M&B.  (*See e.g.*, D.E. Nos. 23-4, 23-5, 23-6, 23-7 & 23-8).  Cortica also provides some evidentiary support for its position, including certain email communications that may suggest that eNitiatives had a larger role to play in this relationship than Plaintiff acknowledges.  (*See e.g.*, D.E. Nos. 31-6, 31-7, 31-11, 31-17 & 31-19).  But the record does not clearly establish, for purposes of this motion to dismiss, that eNitiatives is indeed a part of the contract that is alleged in the Complaint.  As such, the Court cannot conclude that eNitiatives is a necessary party based on any contractual relationship.  *Compare Margulis v. Hertz Corp.*, No. 14-1209, 2015 WL 1969374, at *4 (D.N.J. Apr. 30, 2015) (disagreeing with defendant's characterization of who the contracting parties were because defendant's argument "contradict[ed] the [c]omplaint"), *with Fiscus v. Combus Fin. AG*, No. 03-1328, 2007 WL 4164388, at *5 (D.N.J. Nov. 20, 2007) (determining that certain third parties were necessary to the litigation where plaintiff's own admissions revealed that the claims against defendant were based on an alleged breach of the contract by a third party).

Second, Cortica's argument with respect to the pending litigation in Israel fails for similar reasons.  Again, the Court starts with the allegations in the Complaint which make no mention of eNitiatives' role in the parties' contractual relationship or the Israeli litigation.[11]   Cortica

---

[11]      The Court also notes that the parties have not been able to state with certainty which lawsuit was initiated first.  In its reply brief, Cortica indicates that M&B filed this lawsuit "the day after" eNitiatives initiated the Israeli litigation (Def. Reply. Br. at 11), but counsel was unable to confirm this at oral argument.  (Transcript of May 5, 2020

repeatedly argues that the ongoing litigation in Israel "involve[s], among other things, disputes over billings by eNitiatives and M&B for the services provided . . . ." (*See, e.g.*, Def. Mov. Br. at 3; Odinaev Cert. ¶19). But as Cortica acknowledges, it was eNitiatives, not M&B, that sued Cortica in Israel initially, and the particulars of the claims raised by eNitiatives in the original complaint are not explained by either party. The parties seem to acknowledge that the underlying complaint in the Israeli litigation involves, among other things, a claim for unpaid fees by eNitiatives against Cortica. (Ben-Shimon Cert. ¶ 33). But the parties dispute whether the initial lawsuit involves claims for unpaid fees that overlap with the unpaid fees requested in this lawsuit. (*Compare* Ben-Shimon Cert. ¶32, *with* Odinaev Cert. ¶ 19). Thus, it appears that Cortica is relying on its own counterclaims—which added M&B to the Israeli litigation after this litigation had already begun—to convince the Court that it runs the risk of subjecting Cortica to double and/or inconsistent obligations if eNitiatives is not joined in this litigation. But the Court cannot at this time conclude that such a risk exists. To start, as set forth above, Cortica has not conclusively established eNitiatives' role in the specific contract claims at issue; it follows that Cortica has not conclusively established how any claims raised by eNitiatives in the Israeli litigation conflict with those raised here. Moreover, with respect to any potential overlap between Cortica's counterclaim against M&B and the claims raised here, the Court notes that the Israeli litigation is in its early stages and thus whether and to what extent Cortica will have to litigate those claims is unknown. In sum, given the lack of clarity over the relationship between these parties and how, if at all, the claims in each litigation overlap, Cortica has not met its burden of showing a ***substantial risk*** of incurring double, multiple, or otherwise inconsistent obligations if eNitiatives is not joined. Fed. R. Civ. P. 19(a)(1)(B)(ii); *see also Am. Home Mortg. Corp. v. First Am. Title Ins. Co.*, No. 07-

---

Oral Argument at 48:25–49:14). The parties do agree that M&B did not become a party to the Israeli lawsuit until Cortica, LTD filed its counterclaim, after this lawsuit was initiated.

01257, 2007 WL 3349320, at *7 (D.N.J. Nov. 9, 2007) ("The fact that those already party to the action may bear the full damages and may have to claim contribution or indemnity . . . does not mean the defendant is subject to multiple or inconsistent obligations").

Accordingly, the Court finds that Cortica has not established that eNitiatives is an indispensable party; as such, the Court need not consider the factors for dismissal listed in Rule 19(b). *See CPG Holdings, LLC v. Craig*, No. 07-4072, 2008 WL 11510684, at *5 (D.N.J. June 2, 2008). Cortica's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(7) is DENIED.

## IV.     Conclusion

For all of the foregoing reasons, Cortica's motion to dismiss is DENIED. An appropriate Order accompanies this Opinion.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**